## McKeon v. Ehringer.

[No. 7,303.   Filed June 28, 1911.]

1. INSURANCE.— *Mutual Benefit.*— *Beneficiaries.*— *Complaint.*— A complaint by the party named as the beneficiary in the certificate of a mutual benefit society, against such society and a contesting beneficiary claiming under a different benefit certificate, is not bad as to such contesting beneficiary, though it would be as to the society, for failing to allege that the plaintiff and the assured had done all things required of them to be performed, or the facts showing that they had performed such conditions. p. 229.

2.  INSURANCE.— *Mutual Benefit.— Beneficiaries.— Volunteers.—* A mere volunteer beneficiary of a mutual benefit certificate on the life of another, acquires no vested right therein until the death of the assured.  p. 232.

3.  INSURANCE.—*Mutual Benefit.—Beneficiaries.—Equitable Rights of.—*Where a daughter agreed with her father to pay his assessments in a benefit society in consideration of his making her the beneficiary of his certificate therein, and she performed her agreement, he cannot, without her consent, substitute another as the beneficiary thereof. *Bunyan* v. *Reed,* 34 Ind. App. 295, distinguished.  p. 232.

From Floyd Circuit Court; *William C. Utz,* Judge.

Action by Martha C. Ehringer against Sarah D. McKeon and another.  From a judgment for plaintiff, defendant Sarah D. McKeon appeals.  *Affirmed.*

*James K. Marsh* and *A. Dowling,* for appellant.
*James W. Fortune* and *George H. Hester,* for appellee.

LAIRY, C. J.—Appellant is the widow and appellee is the daughter of Alexander McKeon.  This action grows out of a controversy over the proceeds of a benefit certificate for $2,000, issued by the Supreme Lodge, Knights and Ladies of Honor upon the life of said Alexander McKeon, which certificate, as originally issued, provided that it should be payable to Martha C. Ehringer, and was dated August 25, 1891.  At and prior to the date of the issue of this certificate, it was agreed between said Alexander McKeon and his daughter that, in consideration of her being named as beneficiary in such certificate, she would pay all dues and assessments to be made against him as a member of such mutual benefit association.  In pursuance of this agreement, appellee paid all the dues, assessments and charges against this certificate of membership from the time it was issued in August, 1891, to the date of the death of Alexander McKeon, which occurred on April 17, 1907, amounting to $1,356. After this certificate was issued, Alexander McKeon married appellant, and after said marriage he took steps to have the beneficiary in said certificate changed, so as to make his

wife, Sarah D. McKeon, the beneficiary in the place of his daughter, as first named. The constitution of the Supreme Lodge, Knights and Ladies of Honor, providing for a change of beneficiaries, was as follows:

"Section 5.—Lost. If the benefit certificate of a member be lost, or beyond his control, the member may, in writing, surrender all claims thereto, and direct that a new certificate be issued to him payable to the same or other beneficiary, in accordance with the laws of this order, upon making affidavit of the facts and paying a fee of fifty cents to be forwarded by the subordinate lodge, with the affidavit, to the supreme reporter. The issuing of such new benefit certificate shall cancel and render null and void any and all previous certificates issued to such member.

Section 7.—Change of Beneficiaries. A member desiring to change his beneficiary may, at any time, while in good standing, surrender his benefit certificate, which, together with a fee of fifty cents, shall be forwarded by his lodge, under seal, to the supreme reporter, who shall thereupon cancel the old certificate and issue a new one in lieu thereof to such member, payable as he shall have directed, within the limitations as prescribed by the laws of the order. Said surrender and direction shall be made on the back of the benefit certificate surrendered, signed by the member and attested by the dictator and reporter under the seal of the lodge."

The certificate originally issued was in the possession of appellee at the time McKeon desired to have the beneficiary therein changed. He therefore made the affidavit provided for in section five of the constitution, and forwarded this to the supreme lodge, together with a written surrender of all interest in the certificate, and a request that a new certificate be issued, naming his wife, Sarah D. McKeon, as beneficiary. This was done on April 15, 1907, and the death of Alexander McKeon occurred two days later. The certificate was reissued, in obedience to his request, with his wife as beneficiary, on April 18, 1907, one day after his death.

Both appellant and appellee claim the money due on this

certificate. The supreme lodge did not contest its liability; but paid the money into court.

The questions of law presented arise upon the pleadings. These pleadings are numerous and lengthy, and cannot be set out without unduly extending this opinion. The principal facts admitted by demurrers have been set out, and a brief statement of the pleadings will be sufficient to show how the questions are presented for decision.

Appellee filed a complaint against the lodge and appellant, based upon the certificate dated August 25, 1891, in which she set out the contract between herself and her father, which provided that she should pay all dues and assessments against said benefit certificate, in consideration that she should be made the beneficiary thereunder, and alleging that she had fully performed the contract on her part.

We need not set out the allegations of the complaint in full, for the reason that its sufficiency was not questioned by defendant lodge, and was objected to by defendant

1. Sarah D. McKeon, upon only one ground, which can be determined without further reference to the complaint. Appellant takes the position that her demurrer to the complaint should have been sustained, for the reason that it contains no allegation that decedent and the beneficiary had performed all the conditions · of said benefit certificate on their part to be performed, and contained no specific averment of facts showing the performance of such conditions. It is true that a complaint, based upon an insurance policy or benefit certificate, containing conditions, must contain the general averment that all the conditions precedent to a right to bring the action have been performed, or it must show by specific averments the facts constituting such performance, or a legal excuse for nonperformance. A complaint that contains no such averments is insufficient as against the company or association issuing such contract. *Home Ins. Co.* v. *Duke* (1873), 43 Ind. 418; *Grand Lodge, etc.,* v. *Hall* (1903), 31 Ind. App. 107.

If defendant lodge had demurred to this complaint, and presented this objection, a different question would be raised, but defendant Sarah D. McKeon was in no position to raise this objection to the complaint. She was not a party to the contract sued on, the conditions therein contained were not imposed for her benefit, and her rights, if any, did not depend to any extent upon their performance. Whatever rights she had were created by and depended upon the benefit certificate dated April 18, 1907, in which she was named as beneficiary, and upon which she based her affirmative paragraphs of answer and her cross-complaint. The demurrer of this defendant to the complaint was properly overruled. *Carter* v. *Carter* (1905), 35 Ind. App. 73; *Munhall* v. *Daly* (1890), 37 Ill. App. 628.

After the demurrer to the complaint was overruled, appellant filed an answer in two paragraphs, the first of which was a general denial. Appellee demurred to the second paragraph, which demurrer was sustained, and this ruling of the court is assigned as error.

The second paragraph of answer admits that a benefit certificate for the sum of $2,000 was issued by defendant lodge on August 25, 1891, to Alexander McKeon; that his daughter, Martha C. Ehringer, was named therein as beneficiary; that he was a member in good standing of said lodge at the time said certificate was issued, and that he continued to be a member in good standing until the date of his death, on April 17, 1907; that from the date said certificate was issued until the time of his death he was a contributor to the widows' and orphans' fund of said lodge. The answer then alleges that prior to the death of Alexander McKeon he made a request to the Supreme Lodge, Knights and Ladies of Honor, in accordance with the constitution of said lodge, for a change of beneficiary; that, in obedience to said request, a new certificate was issued by said lodge, in which Sarah D. McKeon, who was then his wife, was named as beneficiary, and the certificate issued on August 25, 1891,

was canceled by said lodge. This last certificate is set out as an exhibit to this paragraph of answer, and it is averred that such certificate was in full force and effect at the time of the death of Alexander McKeon.

The allegations of the complaint, showing the contract between McKeon and his daughter, whereby it was agreed that she should be made the beneficiary under such certificate, in consideration that she should pay all dues and assessments to be made on such certificate, and the performance of such contract by her, are not denied in this paragraph of answer; but appellant claims that the facts averred in reference to the change of beneficiary during the lifetime of McKeon, in accordance with the provisions of the constitution of said lodge, are sufficient to avoid those averments of the complaint, and to show that appellee had no interest in the fund arising from said benefit certificate, even though the contract and its performance on the part of appellee be admitted as averred.

Appellant also filed a cross-complaint, based on the certificate, dated April 18, 1907. Appellee filed an affirmative answer in two paragraphs to this cross-complaint. Appellant filed a demurrer to each of these paragraphs of affirmative answer, which demurrers were overruled by the court. The question presented by this ruling is the same as that presented by the action of the court in sustaining appellee's demurrer to the affirmative paragraph of answer to the complaint, and is presented in the same way. The trial resulted in a judgment for appellee.

The question thus presented is, Did the contract existing between Alexander McKeon and his daughter, as alleged in the complaint, confer upon her such an equitable interest in the proceeds of the certificate as would estop him from substituting in her place a second beneficiary, who was a mere volunteer, having no equities in her favor?

The general rule seems to be that a person who is a mere volunteer beneficiary, named in the certificate issued by a

mutual benefit society upon the life of one of its
2. members, acquires no vested right in the proceeds of
such certificate until the death of the member occurs.
*Masonic, etc., Soc.* v. *Burkhart* (1887), 110 Ind. 189; *Presbyterian Mut. Assur. Fund* v. *Allen* (1886), 106 Ind. 593; *Bunyan* v. *Reed* (1904), 34 Ind. App. 295; *Milner* v. *Bowman* (1889), 119 Ind. 448, 5 L. R. A. 95; *Sabin* v. *Phinney* (1892), 134 N. Y. 423, 31 N. E. 1087, 30 Am. St. 681.

Where, however, a contract exists between the member of
a mutual benefit society, on whose life a benefit certificate
has been issued, and the beneficiary named therein,
3. whereby it has been agreed that said beneficiary
should be named in such certificate, on consideration
that he would pay the dues and assessments on such benefit
certificate, or that he would render to such member some
other valuable consideration therefor, and where such contract has been fully performed, and such consideration rendered on the part of the beneficiary, the courts recognize
the equities arising in favor of such a beneficiary, and will
protect them as against a person who has been substituted
as a beneficiary, and who has no superior equities in his
favor. *Carter* v. *Carter, supra; Maynard* v. *Vanderwerker*
(1893), 30 Abb. New Cas. 134, 24 N. Y. Supp. 932; *McGrew*
v. *McGrew* (1901), 190 Ill. 604, 60 N. E. 861; *Stronge* v.
*Supreme Lodge, etc.* (1907), 189 N. Y. 346, 82 N. E. 433,
12 L. R. A. (U. S.) 1206, 121 Am. St. 902; *Jory* v. *Supreme
Council, etc.* (1894), 105 Cal. 20, 38 Pac. 524, 26 L. R. A.
733, 45 Am. St. 17; *Leaf* v. *Leaf* (1891), 92 Ky. 166, 17
S. W. 354; *Supreme Council, etc.,* v. *Murphy* (1903), 65
N. J. Eq. 60, 55 Atl. 497.

This proposition seems to be abundantly sustained by the
authorities. In the case of *Stronge* v. *Supreme Lodge, etc.,
supra,* the court in discussing a case of this kind says:
"Thus assuming that a contract was made by a member for
a valuable consideration to take out a certificate for the benefit of appellant, it seems to us very clear that after the certifi-

cate has been taken out and the consideration fully furnished by the beneficiary, the member will not be allowed to destroy the rights of his creditor by a new certificate naming a new beneficiary. We do not regard the by-laws and provisions of the certificate or the authorities called to our attention providing for and upholding the right of a member to change the designation of his beneficiary as often as desired without the consent of the latter as at all applicable to such a case as this. They relate to a case where a voluntary and gratuitous designation has been made of a beneficiary who, in the language of the certificate, has acquired 'no interest whatever in the certificate nor in the indemnity fund.' But can there be any doubt that a member of one of these associations might say to a person that if the latter would loan him $1,000 he, the member, would take out a certificate designating the creditor as beneficiary as security for such loan, such designation not to be canceled or changed without the consent of the creditor, and that this contract and agreement would estop and prevent the member from changing the designation whatever might be the ordinary privileges and regulations as between him and the association when no rights of a third party had intervened? While the agreement detailed by appellant is not in terms as complete as the one assumed, we think it is just as effective, because what the parties have omitted specifically to say as between themselves the law says for them. Irvine agreed that he would procure the certificate to be issued designating appellant as beneficiary if she and her husband would establish a new home, take him with them and care for and nurse him in his sickness. The appellant performed her part of the contract and Irvine performed his so far as procuring the certificate to be issued was concerned, and the law now prohibits him from destroying the rights which appellant has acquired in the certificate for a valuable consideration.''

The case of *McGrew* v. *McGrew, supra,* is very similar to the case at bar. In deciding that case the supreme court of

Illinois used the following language: ''The law is well settled in this state that a member of a fraternal beneficiary society, where no intervening rights have attached, may at his pleasure surrender his benefit certificate, and have a new certificate issued and designate therein a new beneficiary, and that a beneficiary has no vested rights in the certificate during the life of the member by reason of the fact that he has been named as a beneficiary in such certificate. *Martin* v. *Stubbings* [1888], 126 Ill. 387, 18 N. E. 657, 9 Am. St. 620; *Benton* v. *Brotherhood, etc.* [1893], 146 Ill. 570, 34 N. E. 939; *Voigt* v. *Kersten* [1896], 164 Ill. 314, 45 N. E. 543; *Delancy* v. *Delancy* [1898], 175 Ill. 187, 51 N. E. 961. While at law said certificate is not assignable, in equity a beneficial interest may be transferred therein, which will be protected by a court of chancery. *Supreme Council, etc.,* v. *Tracy* [1892], 169 Ill. 123, 48 N. E. 401. In this case, McGrew caused the appellee, his daughter, to be named in the second certificate as beneficiary, delivered the certificate to her, and agreed with her that upon his death she was to be paid back the amount which she had advanced to him, from the moneys received from said society upon said certificate. After this agreement was made, the money paid and the certificate delivered to appellee, as between McGrew and appellee he had no right to surrender said certificate and have a new one issued in lieu thereof, made payable to the appellant. In the case of *Supreme Council, etc.,* v. *Tracy, supra,* Tracy, who was a member of the Royal Arcanum, in consideration of a cash loan from his wife caused her to be made the beneficiary in his certificate, which was delivered to and retained by her, she paying all the assessments thereon. Afterwards he made a false affidavit that the certificate was lost and procured from the society a duplicate certificate, naming his daughters as beneficiaries. On page 128 the court said: 'After this agreement was made, the money paid, and the certificate turned over, as between Tracy and his wife he had no right whatever to surrender the certificate.

and have the organization make out a new one payable to another party, and his attempt to do so, based upon a false affidavit, was a fraud on the organization and upon his wife; and his daughters, who were mere volunteers, having advanced nothing, cannot profit by the fraud of Tracy, attempted to be practiced on his wife.' ''

The supreme court of California, in deciding the case of *Jory* v. *Supreme Council, etc., supra,* used the following language: ''The principle here under consideration is the most recent growth of mutual benefit association law, a branch of the law which in itself is young in years; and we know of nothing in the law which deprives a person contemplating membership in a mutual benefit association from so contracting with the proposed beneficiary as that when such certificate is issued, equities in favor of the beneficiary are born of such merit that the insured member has no power to defeat them. The few authorities shedding light upon this question declare the rights of the beneficiary are such as to create a vested interest in the proceeds of the certificate. *Smith* v. *National Benefit Soc.* [1890], 123 N. Y. 85, 25 N. E. 197, 9 L. R. A. 616; *Maynard* v. *Vanderwerker* [1893], 30 Abb. New Cas. 134, 24 N. Y. Supp. 932. Possibly this is not a correct declaration of the principle of law applicable to the conditions; for a second beneficiary might be substituted, wholly innocent of the contractual relations existing between the insured and the first beneficiary, and his substitution give rise to the creation of equities in his behalf, all controlling upon a judicial disposition of the rights of the parties concerned. If the original beneficiary's interest was vested, no subsequent conditions could possibly arise which would defeat his right, and for this reason we think it can hardly be termed a vested interest. The whole matter seems to be rather a question of equities, and the stronger and better equity must prevail. The illustration we have used does not arise in the present case, for we here have no clash of equities. The second beneficiary possesses

no equities. He is a volunteer, pure and simple. His status during the life of the insured is well described in *Smith* v. *National Benefit Soc., supra,* where the court said: 'The designation was in the nature of an inchoate or unexecuted gift, revocable at any moment by the donor, and wholly within his control.' We think a court of equity should declare the insured estopped from substituting a second beneficiary of the character here involved, whenever sound equities are extant in favor of the first beneficiary; and, such estoppel being in force against the insured, it is equally in force and may be successfully urged against the volunteer beneficiary. The respondent is a volunteer beneficiary, and it only remains for us to ascertain from the record what the appellant's equities are, as disclosed by the evidence. She claims by her answer that she and her mother entered into a mutual agreement, whereby each should join a mutual benefit society and make the other a beneficiary under the certificates issued, and that said agreement was carried out. Appellant further alleges that she paid all initiation fees, dues, and assessments upon the benefit certificate taken out by her mother. If these moneys were paid out by appellant under and by virtue of a contract between the parties, and in pursuance of this agreement and scheme for mutual insurance, then she has equities which entitle her to recognition in a court of justice, for it would be a gross imposition and fraud upon her to allow the insured to change her beneficiary under these circumstances.''

This court in the case of *Carter* v. *Carter, supra,* adopted the rule announced, and applied it to a case very similar to the one under consideration.

Appellant cites and relies upon the case of *Bunyan* v. *Reed, supra.* In that case a member of a mutual benefit society was indebted to his brother in the sum of $3,000. He procured a benefit certificate on his life for the sum of $5,000, in which his brother, to whom he was indebted, was named as a beneficiary to the extent of $3,000, and two of

his sisters were also named as beneficiaries to the extent of $1,000 each. The purpose of naming the brother as beneficiary in the amount fixed was to secure to him the payment of the money due to him. The by-laws of the society provided that where two or more beneficiaries were named in a certificate, and one or more of such beneficiaries died prior to the death of the member on whose life the certificate was issued, the survivor or survivors of such beneficiaries should receive the entire benefit. The brother named as beneficiary died before the member, and it was held that the surviving beneficiaries were entitled to receive the entire benefit provided for in the certificate, notwithstanding the equities in favor of the estate of the deceased brother.

That case differs somewhat from the case under consideration. In that case the member did nothing to defeat the rights of his brother under the contract. The by-law providing that the surviving beneficiaries should receive the entire proceeds of the certificate was in force at the time the contract was entered into. No change took place either in the by-laws of the order, or in the form of the certificate, between the time the contract was made and the time the certificate became payable. The interest of the creditor brother in the proceeds of the certificate was lost, not by any act of the member or of the society issuing the certificate, but by operation of law. The contract entered into between the brothers, when construed in the light of the existing by-law of the society, gave to the one who was named as beneficiary no right in the proceeds of the certificate in the event he died prior to the death of the brother on whose life the certificate was issued. We do not regard the decision in that case as being in conflict with the conclusion reached in the case under consideration.

Judgment affirmed.